I respectfully dissent from the majority opinion upon all essential points. The statement of facts in the majority opinion is accurate, and I agree that the controversy involves solely the construction of Sections 10563, 10564, and 10588, General Code. It is stated in the majority opinion that a liberal construction should be given to these sections because they are remedial in their nature. It might readily be conceded that the latter two sections are remedial, but it seems *Page 381 
quite certain, on the other hand, that Section 10563 creates a right and the other two sections provide the remedy. The mere fact of creating a right does not necessarily take from the statute the quality of being remedial, if the sole purpose of the statute is to supply defects in existing laws, but it is apparent that Section 10563 does not supply defects, but merely provides a limitation upon the statutory power to make a will. On the other hand, Sections 10564 and 10588 are remedial in the fullest sense. It is conceded that those statutes should receive a liberal construction, and we think that the results reached must be the same even though all three sections receive a liberal construction. A liberal construction is not by any means a loose construction, but, on the other hand, is defined as a fair and reasonable interpretation so as to promote the object thereof, and to expand the meaning to meet the cases which are clearly within its spirit or reason, and so apply the same that the evil which it is designed to remedy may be restrained. A liberal construction does not permit giving a strained construction to the language of a statute, but pertains rather to manner of applying the statute to cases sought to be brought within its terms. The interpretation must at all times be fair and reasonable. Proceeding upon this basis, let us analyze these sections. Counsel for the respective parties have cited numerous cases decided by other jurisdictions, and necessarily those cases relate to statutes which may or may not be identical with or similar to the Ohio statutes. Even if they are identical they would have no binding force or effect *Page 382 
upon this court unless it should be made to appear that the Ohio General Assembly had adopted the sections under consideration from some other state, and further be made to appear that at the time of such adoption the courts of that state had given a certain interpretation to the language employed, in which event it would be presumed that the Ohio General Assembly had adopted the interpretation as well as the statute. Nothing of this sort is made to appear. The majority opinion cites no cases decided by other jurisdictions, and it is therefore evidently agreed that such cases are not helpful. We are not concerned with the wisdom of these statutes further than to inquire whether a certain interpretation would increase the evil, and, on the other hand, whether another interpretation would diminish it, it being presumed at all times that the Legislature has intended a rational course. We agree with the majority opinion that Section 10563 creates a right which is both salutary and laudable. That portion of Section 10563 pertinent to this inquiry reads:
"* * * child born after executing the will shall take the same share of the estate, real and personal, that he would have been entitled to if the testator had died intestate."
It will be seen that it is not provided that the child shall have the same specific interest in each item of property belonging to the estate, but on the contrary is only awarded such share in the estate, generally, as would have accrued under the statutes relating to intestate estates. The word "share" in the statute is used in the sense of proportion or interest. If the Legislature had intended *Page 383 
to award a specific interest, it would scarcely have mentioned personal property, because even under the intestate laws personal property does not pass directly to heirs, but must be administered and distributed in the manner provided by statute. If the statute meant a legal estate in specific property, that intention could have been clearly expressed by stating that the child should have a share as tenant in common in the real estate. If Section 10563 stood alone it would have to be conceded that there is a measure of ambiguity which might permit the courts to construe it either way without doing violence to its language. Sections 10563 and 10564 were originally enacted as one section. We cannot see that this makes any difference, because in any event they both stand as parts of the legislative provisions on the same subject, and must be construed in pari materia, and effect should be given to all parts, if possible, without doing violence to either. The majority construction of this statute has the effect of making the will null and void as to an after-born child. If this were the real legislative intent, it would have been much easier and simpler to have plainly so stated. Not having done so, but, on the contrary, having recognized the will in that section, and only limited its power as to the one element, it must be presumed that the Legislature intended that the will should stand to the fullest extent, so long as the financial interests of the child do not suffer thereby. When we consider Section 10564 in connection with the provisions of Section 10563, this construction becomes imperative. In the second section the interest of the child is referred to as *Page 384 
a portion and not as a vested interest, and it is required that the portion of such child shall be raised by equal contributions of the persons interested in the will in proportion to the value of what they respectively receive under the will. Again, such right of contribution safeguards specific devises and bequests, thereby clearly indicating that no violence be done to the will of the testator in the matter of specific devises and bequests, and permitting a different apportionment among devisees and legatees where the same is found necessary in order to carry out the testator's intent. All these things indicate that the after-born child is not the sole consideration of these statutes, so long as the full share of the child be awarded to it in any event. Some meaning must be given to that portion of Section 10564 permitting a different apportionment when found necessary, and it is apparent that there must be some tribunal to determine the necessity whereby such different apportionment may be made. Naturally and logically this determination can only be made in the manner that all other laws are administered, namely, by a court of justice. If the child may, in any event, have partition of real estate, and if such right is to be declared under the facts of this case, then the child is empowered to be the sole tribunal and a "different apportionment" becomes impossible. Inasmuch as the words "real and personal" appear in Section 10563, it is apparent that the same rule must apply to both kinds of property, which would bring that section in clear conflict with the laws relating to the administration of estates. It is opposed to all rules *Page 385 
of construction to give the child a specific undivided interest as tenant in common in the real estate without giving it the same interest in all personal property. It is more consonant with legislative expression that the interest of the child in each class of property shall be the same, and therefore that it does not have a specific vested interest in either class, except perhaps that in the liberal interpretation of these statutes, and in order to give them force in effecting the purposes intended, the "share" of the child should become a charge upon both classes of property until, by some proper proceeding, the share of the child shall be determined, as well as the value of such share, and by contribution such share be paid the child. It must be conceded by all parties that the child is entitled to a full share, and that in any proceeding to enforce contribution there must be an orderly judicial determination of the value of such share, and that the same must be paid to such child prior to the claims of any devisees or legatees under the will, and that such child shall have a charge upon all real and personal property to secure such payment. When that end has been attained in an orderly proceeding, full and complete justice has been done to such after-born child, and there is no possibility of an injustice being done unless some fraud shall have been practiced in the course of such a proceeding, or the court be guilty of some travesty upon justice. This view is in entire harmony with Section 10588, which requires all rights to be "heard and determined in a single action." Manifestly if a child can institute a partition suit pertaining to only the real estate *Page 386 
it becomes impossible to determine all rights in a single action.
To give effect to Section 10588 in any rational way, and in order that "a single action" shall determine the rights of all parties interested, if a partition suit of a single item of real estate should be permitted to proceed at the suit of the after-born child or its guardian, it would seem necessarily to follow that all legatees and devisees would have a right to be made parties to the partition suit and to have the contribution made and the amount thereof paid to the guardian of the after-born child in the same action. To hold otherwise would be to completely nullify that section. It is conceivable that the Legislature, in enacting Section 10588, intended to prevent in after-born child, or any legatee or devisee, from bringing a partition suit and prosecuting the same to a final conclusion without at the same time bringing in all parties and having all rights "determined in a single action." Whether the Legislature had this particular matter in mind or not, it is very clear that it has given all devisees and legatees a right to intervene by virtue of that section.
The majority opinion proceeds upon the theory that Section 10563 amounts to a partial revocation, notwithstanding the word "revocation," or any synonym of the word, nowhere appears in any of the sections under consideration. This fact stands out in bold relief when it is seen that the Legislature was no stranger to the word "revocation." In several previous sections it is particularly provided how a will may be entirely or partially revoked. *Page 387 
Those sections also provide what shall be deemed an entire or partial revocation. On the other hand Section 10564, which was originally a part of Section 10563, gives the fullest recognition to the will, though no provision be made in the will for an after-born child, and then proceeds to provide the machinery for preventing such after-born child from being left unprovided for. Having used the word "revocation" in several previous sections, and having carefully omitted to use it in the section under consideration, it is a well-settled canon of construction that it will be presumed that the Legislature did not intend even a partial revocation. To make this construction of the statute practical, it is only necessary to construe the word "share" as meaning proportionate value, and no other construction can be made to consist with the provisions of Section 10564.
The majority opinion inquires: "Upon what theory may it be said that such a child is to be given less consideration than if there had been no will?" It might be answered by inquiring upon what theory the child should be given more consideration than if there bad been no will. Clearly real and personal property are upon the same basis in these sections, and if the child can claim a specific share of real property, it may, by the same token, claim a specific share of personal property. It must be recognized, and all parties must agree, that the after-born child is entitled to the same value as if no will had been made. We only differ as to the manner of determining the value and the means of enforcing its payment.
The majority opinion further proceeds upon the *Page 388 
theory that there is some advantage in being the plaintiff in a partition suit, and some concern is expressed lest the other children or devisees might begin a partition suit. No advantage can accrue to any party to a partition suit over other parties thereto, unless the court improperly permits such an advantage to be obtained. If it shall be declared as a rule of law that a child has an undivided interest as a tenant in common in real estate, any devisee would have a right to begin a partition suit to have that interest set off, or the property sold in the event partition could not be made. The only effect of the majority decision in this case would therefore be to foment strife and litigation, instead of following the plain provisions of Section 10588 that all rights be determined in a single action.
It is no answer to our contentions to say that the testator could have avoided the difficulty by making a codicil; neither does it suffice to say that he is presumed to know the law. The same answer could be made in a very large proportion of cases which actually are litigated, but the fact remains that people continue to be ignorant of the law notwithstanding the well-known presumption, and continue to be neglectful notwithstanding the common experience that much trouble and grief are caused thereby.
We repeat that the child is entitled to full justice, but, in giving justice to such after-born child, the court should be careful not to penalize those who have been made beneficiaries to the point of injustice to them, or to the point of disturbing a wise testamentary disposition of a complicated *Page 389 
estate. None knows better than a husband and father the habits, characteristics, capabilities, faults, and weaknesses of those who are the natural objects of his bounty, and after testamentary disposition has been carefully thought out to safeguard the members of the family against indolence and profligacy and the dangers of being victimized by unscrupulous promoters, the courts should proceed slowly in permitting an absent or after-born child to completely overturn such testamentary disposition.
The majority opinion evidently fears that the child may not realize full value otherwise than by partition suit. The common experience of the bench and bar is that a partition suit should be the last resort in an effort to realize full value out of real estate, and that it should be resorted to only after all efforts at an amicable division have failed.
We agree with the majority opinion that the case ofMcGarry v. Smith, 22 Ohio St. 190, is not helpful in the disposition of this case. The case of German Mutual Ins. Co. v.Lushey, 66 Ohio St. 233, 64 N.E. 120, is discussed by counsel and in the majority opinion. We find no principle decided in that case which is decisive or even helpful in disposing of the present controversy. In that case the court only decided that a will which affirmatively sought to prevent an after-born child from participating would be ineffective to accomplish that purpose, and that an after-born child might participate notwithstanding such provision. We have no quarrel with that decision. In the present controversy we are not concerned with the *Page 390 
right of the after-born child to have its full share of the estate, and are only concerned with the manner of determining and distributing such share to the child. In the Lushey case it clearly appears from the language of the opinion, on page 240 (120 N.E. 122), that the court did not even consider the question of the manner of determining and discharging the claim of the after-born child. It is true that in that case the court determined that the child had an undivided interest in the real estate. It was necessary to so determine in that case in order to protect the child at all, be cause the estate had been settled many years, and the beneficiary named in the will had appropriated the real estate to his own use and had given a mortgage on the entire estate. The mortgage was either a valid lien upon the interest of the child or it was not. And it could only be declared that it was not a valid lien, on the theory that the beneficiary under the will had no right to incumber the estate without first having settled with the after-born child. The only logical effect of that decision was to make the claim of the child a charge upon all the estate, real and personal, until its claim had been adjusted. And this principle we not only concede, but have earnestly contended for.
This court has never previously considered the question involved in the instant case, and naturally is not bound by the decisions of the Courts of Appeals, and for the foregoing reasons we think those decisions have been erroneous. *Page 391